## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

WILLIE M. FOLKS, JR.,

    Plaintiff,

v.

ALISON FOOTE, *HSA*,
KRISTIN RUNZO, *CRNP*, and
KENNETH POMPILIO, M.D.,

    Defendants.

Civil Action No. TDC-23-1356

### MEMORANDUM OPINION

Plaintiff Willie M. Folks, Jr., a former federal inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI–Cumberland"), has filed this civil action in which he asserts claims of allegedly inadequate medical care during his incarceration at FCI–Cumberland in violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, and the Eighth Amendment to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Folks names as Defendants Health Services Administrator ("HSA") Alison Foote and Certified Registered Nurse Practitioner ("CRNP") Kristin Runzo (collectively, "the Federal Defendants"), both of whom were members of the United States Public Health Service at the time of the relevant events, as well as Dr. Kenneth Pompilio, an ophthalmologist in private practice who provided medical services to federal prisoners on a contract basis. Dr. Pompilio has filed a Motion to Dismiss, and the Federal Defendants have filed a separate Motion to Dismiss or, in the Alternative, for Summary Judgment. Although Folks was notified of his right to oppose the Motions, and he sought and received extensions of time to do so, he has not filed any memoranda in opposition to the Motions. Having

reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions will be GRANTED.

**BACKGROUND**

In the presently operative Amended Complaint filed on December 14, 2023, Folks alleges that while he was incarcerated at FCI–Cumberland from October 29, 2020 forward, Defendants provided inadequate medical care for two different medical conditions: chronic obstructive pulmonary disease ("COPD") and glaucoma, in violation of both the FTCA and the Eighth Amendment.

**I.     COPD**

As to COPD, Folks alleges that he has been diagnosed with Stage 3 COPD, which he asserts is "a treatable condition defined by airflow limitation and respiratory symptoms." Am. Compl. at 2, ECF No. 14.     According to Folks, he was prescribed Albuterol, a Mometasone Furoate inhaler, and Tiotropium Bromide/Spiriva to manage his COPD. However, in June 2020, Folks had an adverse reaction to Albuterol, so its use was discontinued. Folks alleges that when his condition worsened in October 2020, and after he was transferred to FCI–Cumberland, CRNP Runzo, with the authorization of HSA Foote, prescribed both Methylprednisolone and Albuterol, despite Folks's documented prior adverse reaction to Albuterol. He asserts that this action constituted both negligence in violation of the FTCA and deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

According to Folks's medical records, on or about September 6, 2017, during an initial health screening upon his entry to the Federal Correctional Institution Hazelton in Bruceton Mills, West Virginia ("FCI–Hazelton"), Folks was assessed as having COPD. On September 13, 2017,

2

Folks was prescribed an Albuterol inhaler as part of treatment for COPD. This prescription was renewed multiple times.

On June 29, 2020, during a chronic care clinic visit at FCI–Hazelton, Folks stated that he used the Albuterol inhaler infrequently and that it made it harder for him to breathe. Where Folks also had an Asmanex inhaler, the Albuterol inhaler was discontinued because of "[s]ide [e]ffects/[d]id not tolerate medication." Med. Records Pt. 1 at 85, Fed. Defs.' Mot. Ex. 5, ECF No. 37-6. On October 6, 2020, however, during a medical visit due to his complaint of a dry cough, FCI–Hazelton medical providers entered a new order for an Albuterol inhaler.

On October 29, 2020, Folks was transferred to FCI–Cumberland. On October 30, 2020, FCI–Cumberland medical staff conducted a health screening and medication reconciliation during which it was determined that Folks should continue to use the Albuterol inhaler.

On November 3, 2020, Runzo, then known as Kristi Crites, evaluated Folks and noted that, as to COPD, Folks was "[d]oing well" on the medications prescribed. Med. Records Pt. 2 at 11, Fed. Defs.' Mot. Ex. 5, ECF No. 37-7. His medications were reviewed and reconciled, and his allergies were reviewed and updated. That same day, Folks was seen by a physician who noted that Folks "arrived with [an] inhaler" and had a long history of smoking but had "[n]o clear [diagnosis] of COPD or asthma." *Id.* at 17. The prescription for Albuterol was discontinued on that date as "not indicated." *Id*. at 13.

Runzo evaluated Folks again on September 15, 2021. At that time, she noted that Folks was not taking any medications for COPD and that he did not have any complaints regarding his breathing. On September 23, 2021, he was seen by a different nurse for complaints of chest congestion and coughing. A chest x-ray was taken and was negative. He was advised to return to the medical unit if his condition worsened.

Folks was again evaluated by different medical staff on December 1, 2, and 4, 2021, and by Runzo on December 8, 2021, each time because of complaints of chest pain and discomfort. On each occasion, his lung sounds were clear and he demonstrated adequate respiratory effort. An electrocardiogram was completed on December 1, 2021 and had normal results. The prescription for Albuterol was not renewed during any of these encounters.

On April 20, 2022, during a visit with Runzo, Folks complained of frequent wheezing and was prescribed Albuterol the next day. On May 26, 2022, Folks scheduled a sick call visit to obtain a refill of the Albuterol inhaler but was marked as a "no show." *Id.* at 74. This visit was rescheduled to June 8, 2022, at which time his request for a refill of the Albuterol inhaler was granted by Runzo.

Runzo next saw Folks for a follow-up visit on August 25, 2022. At that time, Runzo advised Folks to use Albuterol if breathing problems occurred, and she placed an order to renew the Albuterol inhaler.

On September 28, 2022, during a sick call visit with Runzo, Folks reported that he used the Albuterol only as needed but that lately he had needed to use it more often, particularly with activity and when "walking from place to place." Med. Records Pt. 3 at 3, Fed. Defs.' Mot. Ex. 5, ECF No. 37-8. Runzo noted that his peak flows of air were low and heard "minimal wheezing." *Id.* Runzo directed that Folks start taking the medication Mometasone to determine if that helped his breathing and decreased his need for Albuterol.

On November 22, 2022, Runzo noted that Folks was stable on the current medication regimen and renewed the Albuterol inhaler. On December 22, 2022, Folks attended a sick call visit and told Runzo that he did not believe the Mometasone medication was helping and suggested that the dosage be increased.

4

On March 1, 2023, Runzo again renewed Folks's prescription for Albuterol. On April 13, 2023, Folks returned three Mometasone inhalers and two unopened Albuterol inhalers. He stated that the medications did not work and caused him to be short of breath and hurt his chest. He stated that he would prefer to take nothing rather than something that did not work.

During a follow-up visit with Runzo on April 19, 2023, Folks complained of shortness of breath and stated that he had not used either the Albuterol inhaler or the Mometasone inhaler. Because he was refusing to use them, Runzo discontinued both medications and referred Folks for a pulmonary function test.

On April 23, 2023, Folks reported breathing problems during a visit with a different nurse. During his evaluation, he reported that he had returned his inhalers because they did not work, but he had expected to receive different inhalers.

On June 5, 2023, Runzo evaluated Folks during a sick call visit. Folks complained that he was very short of breath, especially when walking or moving, but that he had stopped using the inhalers because they were not working. Runzo noted that Folks was scheduled to see a pulmonologist and in the interim prescribed a different inhaler, Wixela (Fluticasone/Salmeterol). On September 27, 2023, Folks received a pulmonary function test at the University of Pittsburgh Medical Center. The results, received on October 10, 2023, showed reduced but normal lung capacity, a "mild restrictive ventilatory defect," and no airflow obstruction. *Id.* at 46.

On February 6, 2024, Folks was transferred out of FCI–Cumberland, and on March 11, 2024, he received parole and was released from Federal Bureau of Prisons ("BOP") custody.

## II.    Glaucoma

As for glaucoma, Folks asserted in the Amended Complaint that he has "primary open angle glaucoma," which can lead to "optic nerve damage, progressive vision loss, and sometimes

5

blindness if left untreated." Am. Compl. at 3. Folks alleged that while he was incarcerated he was provided visual field tests at most once a year, but medical guidelines recommend that such testing occur at least twice a year for those diagnosed with glaucoma. He also asserted that an annual evaluation by an ophthalmologist is necessary in order to detect any progression of glaucoma. He generally claimed that his glaucoma was poorly managed, which created a risk of vision loss. Folks stated that Foote, Runzo, and Dr. Pompilio were each "involved" in delaying his medical treatment, in violation of both the FTCA and the Eighth Amendment. *Id.*

According to Folks's medical records, while Folks was incarcerated at FCI–Hazelton, he had a diagnosis of "[u]nspecified glaucoma" which was treated with Latanoprost, an ophthalmic medication, and he generally received intraocular pressure checks every four months. Med. Records Pt. 1 at 10, 39, 44, 47.

On June 10, 2019, an ophthalmologist diagnosed Folks as having primary open-angle glaucoma, bilateral, and recommended that he undergo additional testing. After an evaluation at the West Virginia University Eye Institute on March 3, 2020, Folks was prescribed Timolol, a different ophthalmic medication, in addition to Latanoprost, and directed to follow up in four months.

On November 3, 2020, after his transfer to FCI–Cumberland, Folks was evaluated by a physician, who referred him for an optometry consultation. During that consultation on March 22, 2021, Folks's intraocular pressure was found to be normal, and his prescriptions for Latanoprost and Timolol were renewed.

On September 15, 2021, during a medical visit with Runzo, Runzo requested an ophthalmology consultation for Folks, which was to be scheduled with Dr. Pompilio.

6

On March 7, 2022, Folks was sent to Dr. Pompilio's office for the ophthalmology consultation. According to the medical records from that visit, Dr. Pompilio found that all relevant metrics were within normal limits, and he concluded that Folks should continue to use his prescribed eye medications. He also requested that Folks be returned to his office for a visual field test as soon as it could be scheduled but noted that it was "not immergent." Shaw Decl. at 30, Fed. Defs.' Mot. Ex. 1-D, ECF No. 37-2. During a follow-up visit back at FCI–Cumberland on April 20, 2022, Runzo made no change to the treatment plan relating to glaucoma and referred Folks for a return visit with Dr. Pompilio in six months.

On July 25, 2022, Folks had another optometry examination at FCI–Cumberland, during which his intraocular pressure was found to be "stable," and he was directed to continue with his eye medications. Med. Records Pt. 2 at 79. Folks was sent to Dr. Pompilio for an additional ophthalmology evaluation on September 13, 2022. Dr. Pompilio again found that the relevant eye metrics were within normal limits and concluded that his visual field was "unremarkable." Shaw Decl. at 28. He continued Folks on the same medical treatment plan and requested that Folks be returned for another ophthalmology evaluation in six months. According to Folks, during one of these two visits, a visual field test was conducted.

According to Folks, he had another optometry examination on March 7, 2023, at which he was told that the pressure in his eyes was "good," that he should continue to use the medications, and that he should have a visual field test in June 2023. Folks Med. Notes at 6, Am. Compl. Ex. 2, ECF No. 14-2. Folks also states that Dr. Andrew Adamich, the optometrist, told him that he was losing vision in his left eye, with the vision in that eye then at 20/60. Folks had another ophthalmology examination with Dr. Pompilio on March 13, 2023, after which his medications were continued. At that visit, after Folks expressed concern about the optometrist's prior statement

7

that he was losing vision in his left eye, Dr. Pompilio assured Folks that he was not losing vision and that his eyes "are fine." *Id.*

On June 28, 2023, Folks had another optometry examination at FCI–Cumberland. His intraocular pressure was normal, he was continued on the same course of eye medication treatment, and a visual field test was recommended. Dr. Adamich told Folks that while he had planned to conduct a visual field test, the machine was broken so it would have to occur at a later date. On July 14, 2023, Folks reported that his eye medication prescriptions needed to be refilled. According to Folks, he had to use old medications for a period of time.

On September 11, 2023, Runzo entered a request for Folks to have another six-month consultation with Dr. Pompilio.

On October 10, 2023, Folks had another optometry examination at FCI–Cumberland. His intraocular pressure was normal. A visual field test was conducted, and the results were "indicative of early VF defect OD," but there was no recommended change to Folks's treatment regimen. Med. Records Pt. 3 at 45. His vision at that time was 20/30 in both eyes. The optometrist recommended follow-up testing of Folks's intraocular pressure and visual field in six months.

## DISCUSSION

Construed liberally, the Amended Complaint alleges, in the first cause of action ("Count 1"), that (1) pursuant to *Bivens*, the Federal Defendants engaged in deliberate indifference to his serious medical condition of COPD, in violation of the Eighth Amendment; and (2) the Federal Defendants engaged in medical negligence, in violation of the FTCA. In the second cause of action ("Count 2"), the Amended Complaint alleges that (1) pursuant to *Bivens*, the Federal Defendants and Dr. Pompilio engaged in deliberate indifference to his serious medical condition of glaucoma, in violation of the Eighth Amendment; (2) the Federal Defendants engaged in medical negligence relating to the glaucoma treatment, in violation of the FTCA; and (3) Dr. Pompilio engaged in

8

medical negligence relating to the glaucoma treatment, in violation of state law. In their Motion to Dismiss or, in the Alternative, for Summary Judgment, the Federal Defendants seek dismissal of the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or summary judgment under Rule 56. In his Motion to Dismiss, Dr. Pompilio seeks dismissal of the claims against him pursuant to Rule 12(b)(6).

## I.    Legal Standards

Rule 12(b)(1) allows a defendant to move for dismissal when the plaintiff has failed to establish subject matter jurisdiction. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations

9

in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Although the Federal Defendants have submitted exhibits with their Motion, when deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded a "reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Federal Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244–45 (4th Cir. 2002). Where Folks has not submitted such a filing, the Court will construe the Federal

10

Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.    The Federal Defendants

In their Motion, the Federal Defendants argue that: (1) they are entitled to absolute immunity from the Eighth Amendment claims pursuant to the Public Health Service Act, 42 U.S.C. § 233(a); (2) they are entitled to absolute immunity from the negligence claims against them in their individual capacities pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679; (3) the negligence claim relating to COPD fails because Folks failed to exhaust administrative remedies as required by the FTCA; (4) the negligence claim relating to glaucoma is barred by the independent contractor exception of the FTCA; and (5) Folks has not established that the treatment relating to COPD or glaucoma was negligent under Maryland law.

11

## A.     Eighth Amendment

Folks's Eighth Amendment claims against the Federal Defendants are necessarily asserted pursuant to *Bivens,* which permits certain civil actions for damages against federal government officials in their individual capacities for violations of constitutional rights. *See Bivens*, 403 U.S. at 395–97. To state a *Bivens* claim, a plaintiff must allege that "a federal agent acting under color of [federal] authority" violated the plaintiff's constitutional rights. *See id.* at 389. One of the limited circumstances in which *Bivens* is applicable is an Eighth Amendment claim for deliberate indifference to serious medical needs. *Carlson v. Green*, 446 U.S. 14, 16–19 (1980).

The Federal Defendants argue that they are entitled to immunity from the *Bivens* claims relating to both COPD and glaucoma because they were each a commissioned officer of the United Stats Public Health Service ("PHS") at the times that they engaged in the conduct underlying Folks's allegations. By statute, in light of the availability of FTCA claims against the United States:

> The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding . . . .

42 U.S.C. § 233(a). The United States Supreme Court has held that this provision "precludes *Bivens* actions against individual PHS officers or employees" for harm arising from the performance of their duties. *Hui v. Castaneda,* 559 U.S. 799, 812 (2010) (holding that a *Bivens* claim against prison doctors who were PHS personnel was barred by absolute immunity pursuant to 42 U.S.C. § 233(a)).

In a declaration submitted with the Federal Defendants' Motion, Foote has stated that she was commissioned with the PHS from April 27, 1998 until her retirement in October 2023, and that she was such an officer while serving as the Health Services Administrator for FCI–

Cumberland during the events described in the Amended Complaint. Similarly, Runzo has stated in a declaration that she has been a commissioned PHS officer from September 18, 2011 to the present, including at the time of the events described in the Amended Complaint, when she was assigned to FCI–Cumberland as a CRNP. The United States Attorney for the District of Maryland has certified, pursuant to 28 U.S.C. § 2679(d), that both Foote and Runzo were acting within the scope of their employment, as employees of the United States of America, at all times relevant to the allegations contained in the Amended Complaint. Therefore, Folks's *Bivens* claims alleging Eighth Amendment violations by Foote and Runzo are barred by this statutory immunity. *See* 42 U.S.C. § 233(a). These claims are therefore dismissed as to the Federal Defendants.

### B.     FTCA: Individual Capacity

The Federal Defendants argue that the FTCA claims against them in their individual capacities fail because an FTCA claim may be brought only against the United States government. The FTCA provides "a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment" which allows the United States "to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). In order for a claim to be actionable under the FTCA, it must be (1) against the United States; (2) for money damages; (3) for injury, loss of property, personal injury, or death; and (4) caused by the negligent or wrongful act or omission of a government employee who was (5) acting within the scope of employment (6) under

13

circumstances where the United States, if it were a private person, would be liable. *Brownback v. King*, 592 U.S. 209, 212 (2021).

Significantly, a claim against the United States is the exclusive remedy under the FTCA, and "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." 28 U.S.C. § 2679(b)(1). This provision, commonly known as the Westfall Act, confers absolute immunity on federal employees from common law tort claims against them in their individual capacities arising from conduct occurring during the course of their official duties. *See Osborn v. Haley*, 549 U.S. 225, 229 (2007). Pursuant to this statute, the Attorney General may certify that a federal employee's action at issue in a civil action occurred within the scope of the employee's office or employment, and the Court is generally bound to accept such a certification. 28 U.S.C. § 2679(d); *see Osborn*, 549 U.S. at 241 (holding that district courts have "no authority to return cases to state courts on the ground that the Attorney General's certification was unwarranted").

Here, the Federal Defendants have provided certifications from the United States Attorney for the District of Maryland attesting that they were each acting within the scope of their employment during the incidents described in the Amended Complaint. Thus, the FTCA claims asserted against the Federal Defendants in their individual capacities must be dismissed.

**C.      FTCA: Official Capacity**

Folks has also asserted the FTCA claims against the Federal Defendants in their official capacities, which are the equivalent of claims against the United States government itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, by statute, when FTCA claims are certified to be based on actions taken by federal employees in the scope of their

14

employment, "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Thus, the Court must consider whether Folks has stated plausible FTCA claims against the United States.

### 1. COPD

The Federal Defendants argue that the FTCA negligence claim against them relating to COPD must be dismissed because Folks did not first file an FTCA administrative claim relating to his medical treatment for COPD. Before filing an FTCA tort claim in federal court, a plaintiff must first exhaust the administrative process established under the FTCA, consisting of (1) presenting the relevant federal agency with a claim describing, with particularity, the alleged injury and damages; and (2) either receiving a written denial of the claim from the agency or waiting six months from the date of filing without obtaining a final agency disposition. *See* 28 U.S.C. § 2675(a); *see McNeil v. United States*, 508 U.S. 106, 112 (1993). The plaintiff's tort claim must be presented to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b); *see Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994). Furthermore, the tort claim, as presented to an agency, must be "sufficient to enable the agency to investigate" and must place "a 'sum certain' value on [the] claim." *Ahmed*, 30 F.3d at 517 (quoting *Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir. 1990)). A plaintiff must strictly comply with the procedural requirements. *See, e.g.*, *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) ("Precisely because the FTCA constitutes a waiver of sovereign immunity, plaintiffs . . . must file an FTCA action in careful compliance with its terms."). A plaintiff bears the burden of proving an unequivocal waiver of sovereign immunity by showing compliance with the administrative claim requirements. *See Lumpkins v. United States*, 187 F. Supp. 2d 535, 538 (D. Md. 2002).

15

Here, the Federal Defendants have submitted a declaration from Misty Shaw, a paralegal for the BOP Mid-Atlantic Regional Office, who has stated that she conducted a search in the National Tort Database of administrative tort claims for any relevant claims submitted by Folks for adjudication.  Her review revealed that Folks submitted only one FTCA administrative claim relating to medical treatment at FCI–Cumberland, consisting of a Form SF-95 submitted with attachments on March 1, 2023, in which he asserted that he has been diagnosed with open-angle glaucoma and that the medical personnel at FCI–Cumberland delayed treatment and thus caused him to experience vision loss in both eyes.  Following an investigation requested by the BOP Mid-Atlantic Regional Office, Folks's claim was denied on October 3, 2023.  Significantly, the SF-95 and its attached narrative do not identify COPD as the basis of the claim and do not allege inadequate medical treatment of COPD by FCI–Cumberland medical staff.  Although Folks appears to have attached to his SF-95 a letter from a physician in support of a separate Motion for Compassionate Release in which the physician described Folks's multiple health problems, including glaucoma and COPD, and asserted that they were not being adequately treated in prison, that attachment cannot fairly be construed to constitute an FTCA administrative claim relating to COPD. Because Folks failed to file any administrative FTCA claim asserting a claim of negligence in the provision of medical care for COPD, the Court finds that Folks did not exhaust administrative remedies as to his FTCA claim relating to COPD.  Accordingly, the FTCA negligence claim relating to COPD must be dismissed.  *See Kokotis*, 223 F.3d at 278.  The Court does find, however, that Folks properly filed an FTCA administrative claim relating to his treatment for glaucoma and satisfied the exhaustion requirement as to that claim.

## 2.    Glaucoma

As for the FTCA claim relating to glaucoma, the Federal Defendants argue that where such a claim must be based on torts committed by federal employees acting within the scope of their employment, it cannot be based on the acts or omissions of Dr. Pompilio, who is an independent contractor.  For purposes of the FTCA, a government employee includes "officers or employees of any federal agency, members of the military or naval forces of the United States" and "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States."  28 U.S.C. § 2671; *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).  The term "[f]ederal agency" explicitly "does not include any contractor with the United States."  28 U.S.C. § 2671.  Thus, sovereign immunity has not been waived for injuries resulting from the conduct of independent contractors who perform work for the government.  *Robb*, 80 F.3d at 889 (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).    Although the determination of whether a service provider is an independent contractor or an employee of the federal government is a fact-based inquiry, at a minimum, for an individual to be classified as a federal employee, the federal government must have "the power under the contract to supervise a contractor's 'day-to-day operations' and 'to control the detailed physical performance of the contractor.'"  *Wood v. Standard Prods. Co.*, 671 F.2d 825, 829 (4th Cir. 1982); *see Berkman v. United States*, 957 F.2d 108, 113–14 (4th Cir. 1992).

Here, the Federal Defendants have submitted a declaration from Justin Sines, the Acting Health Services Administrator at FCI–Cumberland, who attests that Dr. Pompilio is a third-party contractor physician who provided ophthalmology service to Folks pursuant to a contract, and that FCI–Cumberland medical staff "did not exercise any control over" the care provided by Dr. Pompilio including his treatment decisions and diagnoses.  Sines Decl. ¶ 6, Fed. Defs.' Mot. Ex.

4, ECF No. 37-5. Notably, Folks neither claims nor presents evidence that would support a finding that Dr. Pompilio was anything other than an independent contractor. Thus, any FTCA claim relating to glaucoma treatment must be limited to the acts or omissions of Runzo and Foote, who were federal employees.

The record, however, does not provide a basis to conclude that Runzo and Foote acted negligently in relation to Folks's treatment for glaucoma. For an FTCA claim based on negligence, the relevant law is the law of the state in which the conduct occurred. *See* 28 U.S.C. § 1346(b)(1) (stating that liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred"); *Iodice v. United States*, 289 F.3d 270, 274 (4th Cir. 2002) (stating in FTCA case "the law of that state controls"); *Harris-Reese v. United States*, 615 F. Supp. 3d 336, 367 (D. Md. 2022). Under Maryland law, to prove a claim of negligence by a medical provider, a plaintiff must prove by a preponderance of the evidence: (1) the applicable standard of care; (2) that this standard has been breached; and (3) a causal relationship between the violation and the injury. *See, e.g.*, *Weimer v. Hetrick*, 525 A.2d 643, 651 (Md. 1987); *Ford v. United States*, 165 F. Supp. 3d 400, 422–28 (D. Md. 2016) (applying these elements in an FTCA case under Maryland law).

Under Maryland law, "[t]here is a presumption that the doctor has performed his medical duties with the requisite care and skill." *Riley v. United States*, 248 F. Supp. 95, 97 (D. Md. 1965) (citation omitted). Generally, a medical provider's duty "is to exercise the degree of care or skill expected of a reasonably competent health care provider in the same or similar circumstances." *Crise v. Md. Gen. Hosp., Inc.*, 69 A.3d 536, 553 (Md. Ct. Spec. App. 2013); *see* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(1) (West 2020) (stating that a health care provider is liable for damages only if "it is established that the care given by the health care provider is not in accordance

18

with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time"). In a medical negligence action, the plaintiff bears the burden of proving by a preponderance of the evidence that a defendant's breach of the standard of care proximately caused the injury. *Weimer*, 525 A.2d at 651; *Ford*, 165 F. Supp. 3d at 424–25. In order to demonstrate proximate causation, "the plaintiff must prove the defendant's breach of duty was more likely than not (i.e., probably) the cause of injury." *Hurley v. United States*, 923 F.2d 1091, 1094 (4th Cir. 1991).

Here, the medical records demonstrate that while at FCI–Cumberland, Folks regularly received tests and medical treatment for his glaucoma issues, which consisted primarily of periodic intraocular pressure tests, vision field tests, and two different medications. The record demonstrates that Dr. Pompilio, in fact, conducted ophthalmology evaluations with Folks at approximately six-month intervals, and at least once a year.

Folks does not allege that this course of treatment was improper; rather, his claim centers on his assertion that he did not receive visual field tests twice a year. Instead, the record reflects that Folks received formal visual field tests in June 2022 and September 2023. Folks's negligence claim against Runzo and Foote fails for two primary reasons. First, there is no evidence that either Runzo or Foote was responsible for medical decisions relating to Folks's glaucoma treatment, including the intervals at which visual field tests would occur, or in any way interfered with, delayed, or hindered his treatment. As reflected in the medical records, the treatment decisions were determined and carried out by Dr. Pompilio and the optometrists, Dr. Adamich and Dr. Richard Pesta. Runzo and Foote primarily arranged for the filling of prescriptions for the selected medications and requesting follow-up appointments with the eye specialists.

19

Second, and more importantly, there is no evidence that any delay in conducting a visual field test has caused a medical injury to Folks. Folks has not provided evidence showing an actual injury in that he has lost his sight or that his glaucoma issues have materially worsened, or that any such adverse outcome was caused by the lack of an earlier visual field test. Notably, between the formal vision field tests, Folks had multiple optometry examinations at which his visual field was determined to be "normal." *See, e.g.*, Med. Records Pt. 2 at 21, 79; Med. Records Pt. 3, at 36, 44. Although Folks references an instance in which one of the optometrists, Dr. Adamich, told him on March 7, 2023 that he was losing vision in his left eye and that it was then "20-60," he acknowledges that Dr. Pompilio, after checking the pressure in his eyes at a March 13, 2023 appointment, assured him that he was not losing vision in his eyes and that they "are fine." Folks Med. Notes at 6. Folks has provided no basis to dispute Dr. Pompilio's conclusion. Indeed, his most recent optometric evaluation, on October 10, 2023, revealed that he had normal visual fields and 20/30 vision in both eyes, thus establishing that he had not lost his vision as a result of a failure to provide timely visual field testing.

Under these circumstances, the Court finds that insufficient evidence to support negligence claims against Runzo or Foote. Accordingly, Folks's FTCA claim relating to his treatment for glaucoma necessarily fails. For these reasons, the Court will grant the Federal Defendants' Motion.

### III.   Dr. Pompilio

In his Motion to Dismiss, Dr. Pompilio seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of the claims against him, which are limited to those relating to glaucoma, on the grounds that (1) the claim of medical negligence is barred because Folks filed suit without having first complied with the requirements of the Maryland Health Care Malpractice Claims Act,

Md Code Ann., Cts. & Jud. Proc. § 3-2A-04(a)(1)(i); and (2) Folks has failed to allege sufficient facts to support a viable Eighth Amendment claim.

### A.    Negligence

As discussed above, there is no viable FTCA negligence claim against Dr. Pompilio, who is not a federal employee. Although the Amended Complaint makes no mention of state law, construed liberally, its references to negligence by Dr. Pompilio could be construed as a medical negligence claim under state law. A negligence claim based on medical care is a malpractice claim that, under Maryland law, Folks may assert only if he can demonstrate that he exhausted administrative remedies by first presenting it to the Maryland Health Care Alternative Dispute Resolution Office. *See id.*; *Wilcox v. Orellano*, 115 A.3d 621, 625 (Md. 2015); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (holding that this requirement applies to medical malpractice claims filed in state or federal court). Here, there is no basis to conclude that Folks satisfied this requirement. Accordingly, Folks's negligence claim asserted against Dr. Pompilio must be dismissed.

### B.    Eighth Amendment

Dr. Pompilio alleges that the Amended Complaint does not allege sufficient facts to support a *Bivens* claim that a lack of medical care violated Folks's rights under the Eighth Amendment. In order to state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical

attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 835). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

First, although a *Bivens* claim for a violation of constitutional right requires that the defendant be a federal official, Folks has not alleged that Dr. Pompilio is a federal employee or is otherwise properly treated as a federal official for purposes of this claim. Even assuming that this

22

requirement were satisfied, Folks has not properly alleged a deliberate indifference claim. Folks's claim centers on the failure to provide vision field tests twice a year and an ophthalmologist evaluation once a year. Although Folks has established that he has a serious medical condition, he has not alleged facts sufficient to support the conclusion that the subjective component of a deliberate indifference claim can be established. He has not alleged specific facts showing that Dr. Pompilio was responsible for determining how many vision field tests or ophthalmology evaluations Folks would receive each year and, more importantly, that he had the ability to ensure that they would be scheduled and would occur. He also has not alleged that Dr. Pompilio was subjectively aware that for Folks's particular circumstances, a failure to provide more frequent vision field tests would create an excessive risk to Folks's health generally or vision specifically.

Most importantly, he has not alleged facts that would support that Folks suffered any actual harm or injury that would have been averted if he had received more frequent vision field tests or ophthalmology evaluations. As discussed above, although Folks references an instance in which an optometrist, Dr. Adamich, told him on March 7, 2023 that he was losing vision in his left eye and that it was then "20-60," he acknowledges that Dr. Pompilio, after checking the pressure in his eyes at a March 13, 2023 appointment, assured him that he was not losing vision in his eyes and that they "are fine." Folks Med. Notes at 6. Folks has alleged no facts that provide a basis to dispute Dr. Pompilio's conclusion, or to show that any adverse condition was caused by the infrequency of his vision field tests and ophthalmology evaluations. The Court therefore finds that Folks has not properly alleged a claim that Dr. Pompilio was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

23

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED, and Dr. Pompilio's Motion to Dismiss will GRANTED.  A separate Order shall issue.


Date:  September 25, 2024

THEODORE D. CHUANG
United States District Judge

24